UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAMBRIDGE TEACHERS FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT W. GREENE and GAIL COLOZZI,<br><br>Defendants. | Civil Action No. 1:22-cv-10811 |

## COMPLAINT AND JURY DEMAND

Plaintiff Cambridge Teachers Federal Credit Union ("CTFCU"), by way of Complaint against defendants Robert W. Greene ("Greene") and Gail Colozzi ("Colozzi," together with Greene, the "Defendants"), hereby alleges as follows:

### PARTIES

1. Plaintiff CTFCU is a federal credit union with a principal place of business located at 20 Felton Street, Cambridge, Massachusetts 02138.

2. Defendant Greene is an individual residing at 7 Matthew Drive, Salem, New Hampshire 02079.

3. Defendant Colozzi is an individual residing at 7 Matthew Drive, Salem, New Hampshire, 02079.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332.

5. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this civil action occurred in this judicial district.

## FACTS AND BACKGROUND

6. CTFCU is a not-for-profit federal credit union.

7. CTFCU employed Greene as its Chief Executive Officer.

8. Under Article VII, Section 8 of CTFCU's Bylaws, the Board of Directors is vested with the authority to fix the compensation of its employees, including Greene's.

9. On November 22, 2019, CTFCU's Board of Directors voted to implement a retirement benefit plan for Greene in recognition of his long-standing employment and anticipated retirement.

10. Pursuant to the November 22, 2019 Board of Directors vote (the "Board Vote"), CTFCU's Board of Directors agreed: "The credit union will pay Bob Greene for accrued sick days at [a] 30% per diem amount. Adopted by the Board in 2009 and is currently fully funded."

11. The Board Vote did not apply retroactively.

12. The Board Vote was not intended to adjust to changes in Greene's rate of compensation. In fact, it would have been impossible for the earned sick time benefit contemplated pursuant to the Board Vote to be "fully funded" if the per diem rate was to adjust based upon increases to Greene's rate of compensation.

13. On or about December 14, 2020, shortly before his announced retirement, Greene instructed a subordinate employee, Rachel Quinn, to transfer approximately $61,009.00 from CTFCU's general ledger account to Greene's account.

14. On December 15, 2020, Greene instructed Ms. Quinn to write a check from CTFCU totaling $65,250.00 and made payable to the "Greene Colozzi – Trust" (the "Check").

15. At no point prior to Greene causing the Check to be issued did he justify the amount being paid, nor did he provide documentary support to any CTFCU representative to justify the amount of sick time he accrued and was purportedly entitled to be paid pursuant to the Board Vote.

16. At no point prior to Greene causing the Check to be issued did he discuss the amount of earned sick time he was purportedly entitled to receive with CTFCU's Board of Directors.

17. At no point prior to Greene causing the Check to be issued did he seek approval from CTFCU's Board of Directors.

18. By December 2020, Greene had been working closely with his successor, Ritwik Bhattacharya, to ensure a smooth transition of the Chief Executive Officer position after his retirement. Nonetheless, at no point prior to Greene causing the Check to be issued did he discuss the amount of earned sick time he was purportedly entitled to receive with Mr. Bhattacharya, nor did he inform Mr. Bhattacharya that he was causing Ms. Quinn to issue the Check payable to the "Greene Colozzi – Trust."

19. Based on information and belief, by causing the Check to be issued to the "Greene Colozzi – Trust," Greene was attempting to avoid lawful tax obligations.

20. Based on information and belief, Greene failed to properly claim the purported earned sick time he received via the Check as wages on his 2020 tax filings.

21. On or about April 28, 2020, during the early stages of the COVID-19 pandemic, Greene sent an email to Mr. Bhattacharya stating that his wife "Gail [Colozzi] is coming in to help out as a volunteer on Wednesdays to answer the phone and take messages, help out in general – I mentioned this to Jim [Keegan] when I spoke to him."

22. The foregoing email communication is contradicted by CTFCU's ADP earnings statements. Colozzi first appeared on CTFCU's payroll beginning February 1, 2020, and, by April 30, 2020, Colozzi had been paid approximately $4,300.00.

23. Greene's written statement to CTFCU was materially misleading not only in claiming that Colozzi was a mere volunteer, but also in the amount of time she purportedly worked for CTFCU.

24. According to CTFCU's ADP earnings statements, Colozzi worked between twenty-five (25) and fifty (50) hours per pay period.

25. As Greene was well aware, CTFCU employees must undergo an audit evaluation, a security clearance and be issued a laptop in order to conduct CTFCU's business. None of these requirements were met with Colozzi.

26. In addition, Colozzi was never added to the list of employees CTFCU was required to submit to its bonding company, the bond issued by which must cover all CTFCU employees, even if they are working remotely.

27. Beginning March 2020, CTFCU's hours of operations at its business offices were nonexistent due to the COVID-19 pandemic, drawing into question what services, if any, Colozzi rendered on behalf of CTFCU.

28. Greene wrongfully and unilaterally set Colozzi's initial hourly rate of pay at twenty dollars ($20.00) per hour. Thereafter, Greene caused Colozzi's compensation to fluctuate between twenty dollars ($20.00) per hour, twenty-five dollars ($25.00) per hour, twenty-eight dollars ($28.00) per hour, and forty dollars ($40.00) per hour until Colozzi left CTFCU's employ when Greene retired in December 2020.

29. At no point in time was CTFCU's Board of Directors, Mr. Bhattacharya or any other representative of CTFCU informed of the compensation paid to Colozzi, or the substantial increases made to her hourly rate of pay throughout her brief ten (10) month employment.

30. At no point in time did Greene bring a formal motion to CTFCU's Board of Directors for the purpose of setting or increasing Colozzi's hourly rate of pay.

31. CTFCU's Bylaws, specifically Article XVI, Section 4 state: "No . . . employee . . . of this credit union may participate in any manner, directly or indirectly, in . . . any question affecting his . . . pecuniary or personal interest. . . ."

32. In total, CTFCU paid Colozzi $33,898.26 throughout the calendar year 2020.

33. Colozzi's rate of compensation was substantially similar to that of a manager's. However, CTFCU possesses no information to corroborate that Colozzi was performing managerial type duties or had the responsibilities of that of a manager.

## COUNT I
## BREACH OF FIDUCIARY DUTY
### (CTFCU v. Greene)

34. CTFCU repeats and incorporates by reference the allegations in Paragraphs 1 through 33 of the Complaint as if the same were fully made at length herein.

35. As the Chief Executive Officer, Greene occupied a position of trust and confidence at CTFCU and was required to protect its interests. Greene owed a fiduciary duty to CTFCU, including, *inter alia*, a duty of loyalty and duty of care.

36. Notwithstanding these duties, CTFCU is informed and believes, and thereupon alleges, that Greene willfully and intentionally breached his fiduciary duties by: (i) causing a subordinate employee to issue the Check without authorization and in excess of amounts Greene was entitled to receive pursuant to the Board Vote, and (ii) unilaterally hiring his wife, Colozzi,

and causing her to be compensated at an excessive rate without the requisite approval from the Board of Directors.

37. As a direct and proximate result of Greene's breach of his fiduciary duties, CTFCU has suffered damages in an amount to be determined at trial.

## COUNT II
## FRAUD
### (CTFCU v. Greene)

38. CTFCU repeats and incorporates by reference the allegations in Paragraphs 1 through 37 of the Complaint as if the same were fully made at length herein.

39. Greene falsely misrepresented to CTFCU: (i) the true amount he was entitled to receive in accrued sick time pursuant to the Board Vote in causing it to issue the Check, and (ii) that his wife, Colozzi, would render services as a mere volunteer at a time when she had already been on CTFCU's payroll for an approximate three (3) month period.

40. Greene concealed material information from CTFCU, specifically: (i) the true amount he was entitled to receive in accrued sick time pursuant to the Board Vote in causing it to issue the Check, (ii) that his wife, Colozzi, would render services as a mere volunteer at a time when she had already been on CTFCU's payroll for an approximate three (3) month period, and (iii) Colozzi's exorbitant compensation that was unilaterally implemented by Greene without the requisite approval from the Board of Directors.

41. At the time he concealed the foregoing material information from CTFCU, Greene had a duty to disclose the information as the company's Chief Executive Officer and pursuant to its Bylaws.

42. At the time Greene made the foregoing misrepresentations and/or concealed material information, Greene had knowledge that the information was false.

43. Greene's misrepresentations and/or concealment of material information were done for the purpose of inducing action from CTFCU, namely causing a subordinate employee to issue the Check and retain Colozzi as a volunteer when she was in fact being compensated at the level of a manager.

44. CTFCU relied upon Greene's misrepresentation and/or was unaware of his fraudulent concealment of material facts, and, as a result the Check was issued and Colozzi was wrongfully paid $33,898.26 throughout the calendar year 2020.

45. As a direct and proximate result of Greene's fraud, CTFCU has suffered damages in an amount to be determined at trial.

## COUNT III
## BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (CTFCU v. Greene)

46. CTFCU repeats and incorporates by reference the allegations in Paragraphs 1 through 45 of the Complaint as if the same were fully made at length herein.

47. CTFCU and Greene entered into a valid and binding contract pursuant to which Greene was to render services as CTFCU's Chief Executive Officer, and, in return, he was to be paid compensation.

48. Greene materially breached his employment contract as described above and, specifically, by: (i) causing a subordinate employee to issue the Check without authorization and in excess of amounts Greene was entitled to receive pursuant to the Board Vote, and (ii) unilaterally hiring his wife, Colozzi, and causing her to be compensated at an excessive rate of compensation without the requisite approval from the Board of Directors.

49. Greene's employment contract includes an implied covenant of good faith and fair dealing under Massachusetts law.

50. Greene acted in bad faith and with an improper motive as described herein and in breach of the implied covenant of good faith and fair dealing.

51. Greene's actions violate the reasonable and justifiable expectations of CTFCU under the terms of his employment contract and have the effect of injuring CTFCU.

52. As a direct and proximate result of Greene's material breach of his employment contract and the implied covenant of good faith and faith dealing contained therein, CTFCU has suffered damages in an amount to be determined at trial.

## COUNT IV
## CONVERSION
**(CTFCU v. Colozzi)**

53. CTFCU repeats and incorporates by reference the allegations in Paragraphs 1 through 52 of the Complaint as if the same were fully made at length herein.

54. Colozzi wrongfully exercised dominion and control over CTFCU's funds.

55. Colozzi has failed and refused to return approximately $33,898.26 in funds she wrongfully received from CTFCU despite multiple demands.

56. By failing to return the approximate $33,898.26 in funds she wrongfully received from CTFCU, Colozzi has converted CTFCU's property without legal justification, authorization or privilege.

57. As a direct and proximate result of Colozzi's conversion, CTFCU has suffered damages in an amount to be determined at trial.

## COUNT V
## UNJUST ENRICHMENT
**(CTFCU v. Colozzi)**

58. CTFCU repeats and incorporates by reference the allegations in Paragraphs 1 through 57 of the Complaint as if the same were fully made at length herein.

59. A benefit in the form of approximately $33,898.26 was conferred by CTFCU to Colozzi.

60. Colozzi had an appreciation or knowledge of the forgoing benefit conferred upon her by CTFCU.

61. Colozzi's acceptance and/or retention of the approximate $33,898.26 benefit conferred upon her by CTFCU is inequitable considering Greene's breaches of his fiduciary duties and/or employment contract, and fraud.

62. As a direct and proximate result of Colozzi's inequitable acceptance and retention of the approximate $33,898.26 benefit, CTFCU has suffered damages in an amount to be determined at trial.

**WHEREFORE**, CTFCU demands a judgment in its favor as follows:

 i. Enter judgment in favor of CTFCU and against Greene on Count I through Count III of the Complaint;

 ii. Enter judgment in favor of CTFCU and against Colozzi on Count IV through Count V of the Complaint;

 iii. Award CTFCU its damages, including attorneys' fees and costs, together with pre-judgment and post-judgment interest; and

 iv. Granting CTFCU such other and further relief as the Court deems just and proper.

## JURY DEMAND

CTFCU demands a trial by jury on all issues so triable.

Dated: May 26, 2022                              Respectfully submitted,

**CAMBRIDGE TEACHERS
FEDERAL CREDIT UNION,**
By its attorneys,


*/s/ Michael A. Bednarz*
Robert R. Berluti (BBO #039960)
Michael A. Bednarz (BBO #689047)
**BERLUTI MCLAUGHLIN & KUTCHIN LLP**
44 School Street, 9th Floor
Boston, MA 02108
T: (617) 557-3030
F: (617) 557-2939
rberluti@bmklegal.com
mbednarz@bmklegal.com